UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

|  |  |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>      v.<br><br>SPARTAN TRADING COMPANY, LLC,<br>THE ESTATE OF RICHARD MYRE,<br><br>      Defendants,<br><br>      and<br><br>THE ESTATE OF DALE DAHMEN, AND<br>THE ESTATE OF DOMINICK DAHMEN,<br><br>      Relief Defendants. | Civil Action No.<br><br>23-CV- |

## COMPLAINT

Plaintiff U.S. Securities and Exchange Commission ("SEC") alleges as follows:

1. The SEC brings this action to enforce the Federal securities laws and, through equitable relief, to recover funds invested by the victims of a fraudulent day-trading scheme.

2. In 2019, Richard Myre, Dale Dahmen, and Dominick Dahmen founded Spartan Trading Company, LLC ("Spartan Trading" or the "Fund"). Spartan Trading operated as an unregistered investment fund in which the Fund's three promoters pooled money from investors, purportedly for day trading activities in stocks. The Dahmens told

investors that Myre would be responsible for the trading, which would purportedly generate profits for investors. Myre controlled the bank account into which investors deposited their funds and Myre signed all checks written on the account.

3. From 2019 to 2023, Spartan Trading raised over $3.7 million from dozens of investors in small communities such as Pierz and Belle Plaine, Minnesota and other communities surrounding the Twin Cities. Investors included Myre's and the Dahmens' prior business contacts and friends.

4. The Fund was a sham that defrauded investors in multiple ways. For instance, Spartan Trading, Myre, and the Dahmens raised money on the premise of pooled investing but then failed to make the promised investments in stocks. Instead, for long periods, funds sat idle in Spartan Trading accounts and were slowly eaten away as Myre withdrew money for himself, the Dahmens, and investors in an attempt to keep the scheme going.

5. Spartan Trading, in statements sent to investors by Myre and bearing his contact information, also provided investors with falsified accounting documents. These statements falsely represented to investors that the Fund was earning consistently positive returns. In actuality, the Fund engaged in very little investment activity at all and often lost money on the trades it did make.

6. Myre, acting through Spartan Trading, misled investors to secure their initial investments and then lied to retain them. In some cases, investors put additional money into Spartan after receiving phony statements.

7. The Fund's written agreements with investors permitted Spartan Trading to receive, at most, half of all profits generated by Fund's investments. But the Fund engaged in very little investment activity and accordingly generated few profits.

8. Nevertheless, Myre and the Dahmens regularly withdrew money from the Fund. Overall, during the life of the Fund, Myre and the Dahmens received over $1.9 million of investor money. Of that, Myre received over $1.1 million, while Dale Dahmen received approximately $649,000 and Dominick received $173,113.

9. On February 1, 2023, Myre and the Dahmens were found dead in what police reported as a murder suicide.

10. The aftermath of the deaths has caused significant upheaval for investors. This lawsuit seeks to freeze what remains in Spartan Trading's accounts and to conduct expedited discovery to determine where the investor funds went and what can be recovered for defrauded investors.

**JURISDICTION AND VENUE**

11. The SEC brings this action under the Securities Act of 1933 ("Securities Act") Section 20(b) [15 U.S.C. §77t(b)], the Securities Exchange Act of 1934 ("Exchange Act") Sections 21(d) and (e) [15 U.S.C. §§78u(d) and 78u(e)] and the Investment Advisers Act of 1940 ("Advisers Act") Section 209 [15 U.S.C. §§ 80b-9].

12. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and

Sections 209(d), 209(e)(1), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1), and 80b-14].

13.     Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because certain acts or transactions constituting the violations of the federal securities laws detailed herein occurred in this district and because, at all relevant times, Spartan Trading's principal place of business was in Belle Plaine, Minnesota.

14.     Defendants operated the fund from a home office at Richard Myre's residence in Belle Plaine. Defendants also offered and sold the securities described herein to investors in the District of Minnesota.

15.     Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein.

## DEFENDANTS

16.     **Spartan Trading Company, LLC,** ("Spartan Trading" or "the Fund") acted as an unregistered investment fund operated by Richard Myre. Spartan Trading was incorporated in Nevada in 2019 with its principal place of business in Richard Myre's home in Belle Plaine, Minnesota.

17.     **The Estate of Richard Myre** is the successor in interest to Richard Myre, who is deceased. As of this date, the executor of the Myre Estate is unknown. Richard Myre

was a resident of Belle Plaine, Minnesota. He was 44 years old at the time of death in February 2023.

**RELIEF DEFENDANTS**

18.     **The Estate of Dale Dahmen** is the successor in interest to Dale Dahmen who is deceased. As of this date, the executor of the Dale Dahmen Estate is unknown. Dale Dahmen was a resident of Buffalo, Minnesota. He was 55 years old at the time of death in February 2023.

19.     **The Estate of Dominick Dahmen** is the successor in interest to Dominick Dahmen, who is deceased. As of this date, the executor of the Dominick Dahmen Estate is unknown. Dominick Dahmen was a Buffalo, Minnesota native although he also spent significant time in North Carolina where he worked as a musician. He was 25 years old at the time of death in February 2023.

**FACTS**

20.     In 2019, Myre and the Dahmens founded Spartan Trading Company, LLC. Spartan Trading operated as an unregistered investment fund in which the Fund's three promoters pooled money from investors, purportedly for day trading of stocks.

21.     Myre's name was the only one listed on Spartan Trading's incorporation documents filed with the State of Nevada. Dale and Dominick Dahmen told Investors that Myre would be responsible for the trading, which would generate profits for investors. Myre controlled the bank account into which investors deposited their funds, and Myre signed all known checks drawn on the account.

22. Beginning by at least 2020, Spartan Trading, Myre, and the Dahmens raised over $3.7 million from dozens of investors. Investors included prior business contacts and friends of Myre and the Dahmens. Investors made both cash investments, often in the tens of thousands of dollars, and investments of retirement savings through an IRA custodian firm, that sometimes totaled over $100,000.

23. Myre and the Dahmens, acting for Spartan Trading, required that the investors in the Fund sign, a "Profit Participation Agreement." The two-page Agreements set out the principal amount and commencement date of the investor's investment in the Fund and provided a mechanism for sharing investment profits.

24. The Agreement guaranteed investors the first 2.5% of any profits generated each month. Spartan Trading was entitled to the next 2.5% of profits, and any profits above 5% were to be split evenly between the investor and Spartan Trading. Investors were given the option to leave profits in their investment accounts or to withdraw them monthly.

25. Myre provided investors with statements for their Spartan Trading accounts. These statements summarized, as of the first of each month, the investment amount, balance, previous month's profit, and withdrawal amount per month for the investor's account.

26. For example, Myre reported to one investor that he had made at least 2.9% on his investment each month, with consistently positive monthly returns. Myre, acting on behalf of Spartan Trading, reported similar returns to other investors.

27.     Myre provided the investors with return information that was simply false. In actuality, as explained below, Myre put some investor money in a Bank of America account and transferred some to brokerage accounts, principally a TD Ameritrade account.

28.     The activity in the TD Ameritrade account does not support the kind of consistent monthly returns reported to investors. In fact, the TD Ameritrade account held only cash until May of 2021 (meaning that it had no investment activity of any kind prior to that time). At that point, Myre allocated a little over $100,000 to stock investments. Myreinvested slightly more money in stocks over the next several months, peaking at about $187,000 as of August 31, 2021. By contrast, as of that same date, the Fund's TD Ameritrade account had over $1 million simply sitting in cash.

29.     In sum, Spartan Trading made profits of $80,697.69 from May to August of 2021. At most, under the Profit Participation Agreements, Myre, and the Dahmens would have been entitled to half of those profits, or $40,348.98 (in actuality, because investors are entitled to the first 2.5% of profits each month, Myre's and the Dahmens' entitlement is likely even lower). For the rest of 2021, the Fund sustained losses on its investments, meaning Myre and the Dahmens were entitled to nothing.

30.     Bank and brokerage records indicate similar results in 2022. For example, the total profits in the TD Ameritrade account for February and March 2022 (the only profitable months in 2022 for the Fund's TD Ameritrade investments were $571.73, meaning the maximum entitlement of the Fund's promoters was $285.87.

31. Disregarding the terms of the Profit Participation Agreement, Myre and the Dahmens received much more out of the Fund than they were entitled to. During the entire time of the fraud, Myre and the Dahmens withdrew approximately $1.9 million from the Spartan Trading Bank of America account.

32. During 2021, Myre took $548,262.50 of investor funds from the account, while Dale Dahmen received $183,055 and Dominick Dahmen received $81,561.59, meaning that in total the three took $812,879.09 out of the account in 2021. Based on their entitlement to half of overall profits, Spartan Trading would have needed to generate over $1.6 million in profits in 2021 in order for those payments to be justified under the Profit Participation Agreements. The Fund's TD Ameritrade account actually generated only $80,697.96 in profits in 2021 and sustained losses that far exceeded that amount.

33. The pattern for 2022 is similar. Myre continued to improperly take money out of the Bank of America account. Myre took $345,000 of investor funds, while Dale Dahmen received $275,192.15 and Dominick Dahmen received $81,751.51. Therefore, the three misappropriated $701,943.66 of investors' money in 2022. Again, far from the $1.4 million in profits that would have been needed to justify those payments, during this period, the Fund's TD Ameritrade account shows a total of only $571.73 in investment profits.

34. Overall, during the life of the Fund, Myre and the Dahmens took over $1.9 million of investor money from the Fund's accounts for themselves. Of that, Myre took over

$1.1 million, while Dale Dahmen took approximately $649,000 and Dominick Dahmen took $173,113.

35.     The scheme continued in this vein until the fraud began to unravel in late 2022.

36.     Beginning around that time, Myre and the Dahmens met concerning the fund's trading activity and organizational structure

37.     On February 1, 2023, the three men met in a pick-up truck in the parking lot of a restaurant in Bloomington, Minnesota. All three were later found dead of apparent gunshot wounds inside the truck.

38.     After news of the deaths became public, investors began to approach Bloomington police and the SEC inquiring as to the status of the money they had invested in Spartan Trading.

39.     The aftermath has caused significant upheaval for investors. At least one couple who had invested over $100,000 with Spartan Trading had to sell their home and move out of state to be closer to family. Other investors have lost retirement savings and inheritances. Some face the prospect of paying off loans that they took out in order to invest with Spartan Trading.

40.     A review of available records for Spartan Trading-associated accounts shows less than $6,000 remaining in the Bank of America account and approximately $400 in the TD Ameritrade account.

41. The SEC now brings this action to freeze what funds remain in Spartan Trading's accounts, freeze any funds in the Fund promoters' estates, and attempt to trace the hundreds of thousands of dollars of investor funds taken out of the Fund with the goal of returning funds to defrauded investors.

## COUNT I

**Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5
(Against Spartan Trading and Myre Estate)**

42. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43. Spartan Trading and Myre, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and prospective purchasers of securities.

44. Each acted with scienter in that they knowingly or recklessly made the material misrepresentations and omissions and engaged in the fraudulent scheme identified above.

45. By reason of the foregoing, Spartan Trading and Myre violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT II

### Violations of Section 17(a) of the Securities Act
### (Against Spartan Trading and Myre Estate)

46. Paragraphs 1 through 41 are realleged and incorporated by reference as though fully set forth herein.

47. Spartan Trading and Myre, in the offer and sale of securities, by the use of the means and instruments of interstate commerce, directly or indirectly:

   a. engaged in fraudulent devices, schemes, artifices, transactions, acts, practices and courses of business;

   b. obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c. engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

48. Spartan Trading and Myre acted intentionally, with severe recklessness, and at least negligently in the fraudulent conduct described above.

49. By reason of the foregoing, Spartan Trading and Myre violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT III

### Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Against Myre Estate)

50. Paragraphs 1 through 41 above are realleged and incorporated herein by reference.

51.     During the relevant time period, Myre acted as an investment adviser to Spartan Trading within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

52.     Myre, by use of the mails and the means and instrumentalities of interstate commerce, directly or indirectly, while acting as an investment adviser, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud clients or prospective clients; and (b) engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon clients or prospective clients.

53.     By engaging in the conduct described above, Myre, directly or indirectly, violated Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and 80b-6(2)].

## COUNT IV

**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder
(Against Myre Estate)**

54.     Paragraphs 1 through 41 above are realleged and incorporated herein by reference.

55.     By his conduct, Myre, while acting as an investment adviser to a pooled investment vehicle, has made untrue statements of material fact or omitted to state a material fact necessary to make, in light of the circumstances, the statements made not misleading to an investor or prospective investor or has otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to an investor or prospective investor in the pooled investment vehicle.

56. By reason of the foregoing, Myre has violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT V

### Unjust Enrichment
### (Against All Relief Defendants)

57. Paragraphs 1 through 41 above are realleged and incorporated herein by reference.

58. Dale Dahmen and Dominick Dahmen obtained money, property, or assets to which they have no legitimate claim because of the violations of the securities laws by Myre and Spartan Trading.

59. Each of the Relief Defendants should be required to disgorge all ill-gotten gains that inured to their benefit under the equitable doctrines of disgorgement, unjust enrichment, and constructive trust.

## RELIEF REQUESTED

**WHEREFORE,** the SEC respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Spartan Trading and Myre committed the violations charged and alleged herein.

### II.

Enter an Order of Permanent Injunction restraining and enjoining Defendant Spartan Trading, its officers, agents, servants, employees, attorneys, and those persons in

active concert or participation with it who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder, and Sections 206(1) [15 U.S.C. § 80b-6(1)], 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)], 206(4) [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### III.

Issue an Order requiring Defendants and Relief Defendants to disgorge the ill-gotten gains received as a result of the violations alleged in this Complaint pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), (5) and (7)], including prejudgment interest.

### IV.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### V.

Grant such other relief as this Court deems appropriate.

                                    Respectfully Submitted,

Dated: June 29, 2023            *Charles J. Kerstetter*
                                    Charles J. Kerstetter
                                    (kerstetterc@sec.gov)
                                    Lee Farnsworth
                                    (farnsworthl@sec.gov)
                                    *pro hac vice pending
                                    175 West Jackson Blvd., Suite 1450
                                    Chicago, IL 60604
                                    Phone:  (312) 353-7390
                                    Facsimile: (312) 353-7398
                                    Attorneys for Plaintiff
                                    U.S. Securities and Exchange
                                    Commission


                                    Craig Baune
                                    MN Bar No. 331727
                                    Assistant United States Attorney
                                    District of Minnesota
                                    600 U.S. Courthouse
                                    300 South Fourth Street
                                    Minneapolis, MN 55414
                                    Telephone: (612) 664-5600
                                    Email: craig.baune@usdoj.gov

                                    *Local Counsel*