UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States Securities and Exchange Commission, | Civ. No. 23-1997 (JWB/DTS) |
| Plaintiff,<br>v. | **ORDER ON EMERGENCY MOTION FOR ANCILLARY RELIEF** |
| Spartan Trading Company, LLC, The Estate of Richard Myre, | |
| Defendants, | |
| and | |
| The Estate of Dale Dahmen, and The Estate of Dominick Dahmen, | |
| Relief Defendants. | |

The United States Securities and Exchange Commission ("SEC") on June 29, 2023, sought emergency ancillary relief in a case involving Spartan Trading Company, LLC ("Spartan Trading"), an investment fund alleged to be fraudulent. (*See* Doc. No. 3.) The founders of the fund were Richard Myre, Dale Dahmen, and Dominick Dahmen. The Court convened counsel for the SEC, the Defendants, and the Relief Defendants for a conference call also on June 29, 2023. The parties agreed to propose a joint interlocutory asset freeze order pertaining to assets held by both sets of Defendants by June 30, 2023.

## FACTUAL ALLEGATIONS

The SEC in its Complaint contends that investments in the Spartan Trading fund qualify as securities in the form of investment contracts. (*See generally* Doc. No. 1.)

Spartan Trading, through its founder Richard Myre, is alleged to have knowingly engaged in an elaborate scheme of materially false representations to investors and omitting important facts to obtain investor funds, all in violation of federal securities laws. The alleged scheme deteriorated internally in late 2022. The three founders were found dead in a murder-suicide in Bloomington, Minnesota, reportedly stemming from a business dispute.

The SEC claims that Spartan Trading and Richard Myre committed securities fraud, while Dale Dahmen and Dominick Dahmen unjustly enriched themselves with investor funds obtained through the investor fraud scheme. The estates of the Dahmens (which are named in the Complaint as Relief Defendants) are not charged with wrongdoing but with receiving and possessing ill-gotten investor funds.

The SEC makes the following additional material allegations:

- From 2019 to 2023, Richard Myre, Dale Dahmen, and Dominick Dahmen convinced investors to invest in Spartan Trading based on a pooled day trading approach. Investors were told that Myre would manage the investments and that the investors would receive half of all profits.

- Most of the investment fund's assets were held in cash, and Myre provided fraudulent accounting records to the investors, showing consistently positive monthly returns and false "profit" distributions.

- Despite the presumption of pooled trading, Myre made few actual investments and those that were made often lost money.

- Myre and the Dahmens collectively withdrew over $1.9 million from the Spartan Trading accounts for personal use, with no legitimate claim to the money.

- The aftermath of the fraudulent scheme led to severe financial difficulties for many investors, including loss of retirement savings and inheritances, and at least one investor had to sell the family home.

## FACTUAL FINDINGS

Based on the arguments of counsel, and all the papers filed in support of the request for relief, the Court makes the following factual findings:

1. This Court has jurisdiction over the subject matter of this case and there is good cause to believe it will have jurisdiction over all parties.

2. The SEC has made a prima facie showing that Defendants and Relief Defendants (hereinafter "Defendants") have engaged in acts, practices, and transactions that constitute violations of federal securities laws or potentially hold funds obtained through a fraudulent scheme that was in violation of federal securities laws.

3. There is good cause to believe that investor funds will be dissipated, concealed, or transferred from the jurisdiction of this Court—assets which could be subject to an order of disgorgement.

4. There is good cause to believe that, unless restrained or enjoined by order of this Court, Defendants may alter or destroy documents relevant to this action.

## DISCUSSION

The SEC seeks emergency ancillary relief, attendant to an equitable claim of relief for disgorgement and prejudgment interest, on Defendants' ill-gotten gains. *See S.E.C. v. Wyly*, 860 F. Supp. 2d 275, 282–83 (S.D.N.Y. 2012) (equitable disgorgement is remedial in nature and survives because it prevents unjust enrichment). The SEC seeks to freeze Defendants' assets corresponding to the sums of wrongfully obtained investor funds, and it seeks expedited discovery.

"It is well settled that a district court has authority to enter an asset freeze order in

an SEC enforcement action." *S.E.C. v. Petters*, No. 09-cv-1750 (ADM/JSM), 2009 WL 3379954, at *2 (D. Minn. Oct. 20, 2009) (collecting cases). The SEC has a legitimate interest in ensuring the alleged ill-gotten profits are not dissipated beyond the reach of the Court. However, the Court must balance the equities in ruling on this request for expedited equitable relief and consider the burden that the asset freeze places on the Defendant estates and families involved. *See S.E.C. v. Quan*, No. 11-cv-723 (ADM/JSM), 2011 WL 1667985, at *5 (D. Minn. May 3, 2011) (citing *S.E.C. v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972)).

An asset freeze requires a lesser showing than is required for a temporary restraining order or a typical preliminary injunction; "the SEC must establish only that it is likely to succeed on the merits" of its claims. *See S.E.C. v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998); *see also S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990) (upholding asset freeze even though evidence was insufficient to uphold preliminary injunction). A more substantial showing is required "whenever the relief sought is more than preservation of the status quo." *Unifund SAL*, 910 F.2d at 1039.

The SEC seeks disgorgement and return of ill-gotten investor funds and argues that unless Defendants' assets are frozen, investors may be harmed if remaining assets are not preserved. The SEC contends that Spartan Trading has nearly no business operations currently and that it is uncertain who has access to Spartan Trading's accounts today.

The SEC and Defendants have agreed on the terms of an interlocutory asset freeze order. They do not disagree on the entry of the order generally nor on the maximum dollar value of assets to be frozen for each of the Defendants. They disagree on specific

instances, such as whether real property belonging to Dale Dahmen should be subject to the freeze; whether carve-outs from the asset freeze will be necessary to meet reasonable living expenses of family members; and the timing of expedited discovery.

The Court issues an interlocutory freeze order setting forth general terms and addressing the parties' points of contention. The Court does not believe that the SEC is entitled to maintain an interlocutory freeze order indefinitely up to and perhaps including the time of trial without a proper showing of good cause. In view of the SEC's minimum showing on the merits at this very preliminary stage, it should not be entitled to interfere with unrestricted use of the Defendants' accounts for more than a brief interval without a showing of good cause. The time interval is set forth in the Court's Order below.

## ORDER

Based on these findings, **IT IS HEREBY ORDERED** that the SEC's Motion for Emergency Ancillary Relief (Doc. No. 3) is **GRANTED** as follows:

**I.   INTERLOCUTORY ASSET FREEZE ORDER**

1. All funds and other assets of Defendants Spartan Trading Company, LLC and Estate of Richard Myre (collectively "Defendants"), and Relief Defendants Estate of Dale Dahmen and Estate of Dominick Dahmen (collectively "Relief Defendants") are hereby frozen up to the following amounts:

   a. Estate of Richard Myre: $1,143,263

   b. Estate of Dale Dahmen: $648,747

   c. Estate of Dominick Dahmen: $173,113

   d. Spartan Trading Company, LLC: $3,722,365

2. Accordingly, Defendants and Relief Defendants and their officers, agents, servants, employees, attorneys, trustees, and those persons in active concert or participation with any one or more of them, and each of them, who receive notice of this Order or of the terms of these asset freeze provisions are restrained from, directly or indirectly, withdrawing, transferring, selling, pledging, encumbering, assigning, dissipating, concealing, or otherwise disposing of, in any manner, any funds, assets, accounts, or other property belonging to any Defendant or Relief Defendant.

3. Any bank, financial or brokerage institution, or other person or entity holding any such funds or other assets referred to in this Order, in the name of, for the benefit of, or under the control of Defendants or Relief Defendants which receives notice of this Order or its asset freeze provisions, shall hold and retain within its control, and shall prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off, sale, liquidation, dissipation, concealment, or other disposal, of any such funds or other assets.

4. This Order shall be imposed for an initial term of 60 days, except that the interest in the following real property belonging to Dale Dahmen is frozen for 14 days:

    a. Lot 4, Block B, Kapsner's Addition the Village of Pierz, Morrison County, Minnesota; and

    b. Lot 17 of Crappie Beach, Morrison County, Minnesota.

5. This Order shall be renewable upon a showing of good cause for the need for continuing or additional relief. Any party may seek to modify this Order or seek leave from this Order upon a proper showing.

## II.   DIRECTIVES TO FINANCIAL INSTITUTIONS AND OTHERS

1. Pending further order of this Court, any financial or brokerage institution, business entity, or person that holds or has held, controls or has controlled, or maintains or has maintained custody of any assets of the Defendants or Relief Defendants, shall:

   a. prohibit all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of assets, except as directed by further order of the Court; and

   b. deny all other persons access to any safe deposit box that is owned, controlled, managed, or held by, on behalf of, or for the benefit of any of the Defendants and/or Relief Defendants, either individually or jointly.

## III.   ORDER PROHIBITING DESTRUCTION OF RECORDS

1. Defendants and Relief Defendants and all of their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any of them, are restrained and enjoined from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner any of the books, records, documents, correspondence, ledgers, accounts, financial transactions, statements, electronic files, computers, or any other property or data of any kind, and wherever located or stored:

   a. pertaining in any way to any matter described in the Complaint, or any amendment thereto, filed by the SEC in this action; or

    b.  that were created, modified or accessed by Defendants and/or Relief Defendants.

(These documents and data are collectively referred to as "Evidence.")

  2.  Such Evidence includes both "hard copy" versions and electronically stored information in Defendants' or Relief Defendants' possession, custody, or control, including text files, data compilations, word processing documents, spreadsheets, email, voicemail, databases, calendars and scheduling information, log, file fragments and backup files, letters, text messages, instant messages, memoranda, notes, drawings, designs, correspondence, or communication of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, cloud storage, social media, websites, personal digital assistants (PDA), or other handheld or smartphone devices.

  3.  The obligations set forth in this Section include an obligation to provide notice to all Defendants' and/or Relief Defendants' employees, custodians, agents, or contractors who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third parties, such as an internet service provider or a cloud computing provider, if such Evidence is within Defendants' and/or Relief Defendants' control.

  4.  Defendants and Relief Defendants are ordered to act affirmatively to prevent the destruction of Evidence. This duty may necessitate:

    a.  quarantining Evidence to avoid its destruction or alteration; or

      b.    discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders.

5.    Defendants and Relief Defendants are directed not to run or install any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

**IT IS HEREBY FURTHER ORDERED** that the parties are to contact the chambers of Magistrate Judge David T. Schultz by close of business on Wednesday, July 5, 2023, to schedule an initial appearance to address any remaining issues pertaining to this Order, whether related to a request for expedited discovery or issues concerning which assets are subject to the Interlocutory Asset Freeze Order.

Date: June 30, 2023                      *s/ Jerry W. Blackwell*
                                             JERRY W. BLACKWELL
                                             United States District Judge